UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL CRYSTAL TRUJILLO,<br><br>Petitioner,<br><br>v.<br><br>DERRAL ADAMS, Warden,<br><br>Respondent. | No. 1:17-cv-00769-SKO HC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**(Doc. 1)** |

Petitioner, April Crystal Trujillo, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] In her petition, Petitioner presents one ground for habeas relief: the trial court violated her Fifth and Fourteenth Amendment Rights by admitting a non-*Mirandized*[2] statement at trial. Having reviewed the record and applicable law, the Court will deny the petition.

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.
[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1

I.   **Procedural and Factual Background**[3]

This case arises out of a two-vehicle traffic accident that occurred at the intersection of White Lane and Gosford Road in Bakersfield on April 23, 2011 at approximately 11:45 p.m. Petitioner was the driver and sole occupant of a white, Ford F-150 truck.

The other vehicle involved in the accident, a black Pontiac Grand Am, had three occupants: Giovanni Perez ("Perez") was the driver, and Vicki Piceno ("Piceno") and Janet Rodriguez ("Rodriguez") were the passengers. The three individuals were driving to a Fastrip gas station at the intersection of White Lane and Gosford Road to meet up with Rodriguez's boyfriend, Julio Garcia ("Garcia").

Earlier that same evening, Petitioner spent a few hours at a Mexican restaurant where she ate a few tacos and consumed five 22-ounce beers, four shots of liquor, and one mixed drink. After leaving the restaurant, Petitioner drove eastbound on White Lane, heading toward the intersection with Gosford Road.

A witness was driving eastbound on White Lane at the same time, going approximately 55 miles per hour. The witness testified that approximately eight-tenths of a mile from the intersection with Gosford Road, the witness saw a white pickup truck pass her "going incredibly fast." The witness described how the white truck "came out of nowhere" going "a good 70 to 80 miles an hour." As the truck came up behind the witness, it almost hit her, but then "erratically moved over" to the fast lane. The witness noted that the light for eastbound traffic on White Lane, at the intersection of Gosford, was red and hoped the truck would not run the red light, but it did, and "there was a collision."

---

[3] The factual background, taken from the opinion of the California Court of Appeal, Fifth Appellate District, *People v. Trujillo* (Cal. Ct. App. Nov. 20, 2015) (No. F068133), is presumed to be correct. 28 U.S.C. § 2254(e)(1).

2

Another witness testified that the black Grand AM was heading westbound on White Lane. Approaching the intersection of White Lane and Gosford Road, the Grand Am stopped in the left-turn lane and waited for the turn signal to turn green in order to turn left onto Gosford Road. The witness was directly behind the Grand Am. After the left-turn signal changed to green, the Grand Am entered the intersection, with the white truck, driven by Petitioner, simultaneously approaching the intersection. Although the traffic signal was red, the white truck did not stop and continued into the intersection. The truck slammed into the Grand Am and it was "pushed all the way out of the intersection." The Grand Am eventually came to rest against a telephone pole. The witness saw that the truck had only one occupant – the driver.

People immediately rushed to the scene, including Rodriguez's boyfriend, Garcia, who had been waiting for Rodriguez in the parking lot of the Fastrip located at the intersection. Garcia testified that he did not immediately realize his girlfriend was in the Grand Am. Garcia saw the white truck roll to a stop; it stopped approximately 20 feet away from where he was standing. Garcia saw Petitioner exit from the driver's side door.

A witness who pulled up to the Fastrip parking lot at the intersection just before the collision described the scene after the collision. He testified that he saw a white truck with front-end damage, a woman lying on the sidewalk, and the Grand Am at rest against a telephone pole. The witness noticed Petitioner looking in the truck, trying to find something and walking back and forth between the white truck and the woman lying on the sidewalk. Eventually Petitioner told the witness she needed to reach someone and gave him a couple of numbers to call. The witness asked Petitioner if she was okay and she said "no"; he also asked if she was driving the truck and she again responded "no."

The occupants of the Grand Am, Perez, Piceno, and Rodriguez, were taken for emergency medical treatment. Perez suffered a broken collarbone, a collapsed lung, and bleeding on the brain. When Perez was admitted to the hospital on the morning of April 24, 2011, he was in a coma. He remained in a coma until the end of June or early July 2011. At the time of trial, in 2013, his condition had improved, but it was difficult for him to move and he used a wheel chair. Perez had cognitive impairment but was able to hold simple conversations.

Rodriguez suffered a bruised lung, a fractured femur, and fractures of the supporting bones for her lower-back vertebrae. She had a metal rod inserted in her leg.

Piceno suffered bruised lungs as well as fractures of her top rib on the right side, breastbone, and the supporting bones for her lower-back vertebrae.

Bakersfield Police Officer Jerry Whisenhunt ("Officer Whisenhunt") responded to the scene to conduct a traffic investigation. At the scene, Officer Whisenhunt noted Petitioner was "hysterically upset, crying, kept looking at the two vehicles, looking at what was going on." He observed that Petition had striations on the left side of her neck that were consistent with a "seat belt burn" injury. Petitioner told Officer Whisenhunt, "I was driving the white truck," and pointed to the truck. She also told him that she was the only person in the truck.

In speaking with Petitioner, Officer Whisenhunt noted a strong odor of alcohol coming from her breath and person; he also observed she was unsteady on her feed and had red, watery eyes. Based on these observations, Officer Whisenhunt conducted a preliminary alcohol screening ("PAS") test on Petitioner and the results indicated that she had a blood alcohol concentration ("BAC") of 0.26 percent. He then arrested Petitioner on suspicion of driving under the influence of alcohol, handcuffed her, and placed her in his patrol car.

4

Petitioner consented to a chemical test and was driven from the scene to a local hospital around 12:30 a.m. or 12:45 a.m. Petitioner's blood was drawn at 1:15 a.m. The results showed Petitioner had a BAC of 0.26 percent.

After Petitioner was medically cleared, Officer Whisenhunt took her back to his patrol car to drive her to the county jail. As he sat in the driver's seat with Petitioner in the back seat, Officer Whisenhunt advised Petitioner of her constitutional rights pursuant to *Miranda* and interviewed her for a minute or two. Petitioner was not upset or crying anymore; she said she understood her rights and agreed to talk to him. Petitioner was cooperative and readily responded to his questions.

Petitioner admitted that she had been at La Cabana from approximately 8:00 p.m. to 10:00 p.m. and had drunk five beers, four shots of liquor, and one mixed drink. Petitioner remembered leaving La Cabana and driving eastbound on White Lane to a convenience store, but had no memory of leaving the store. Petitioner remembered being in a collision, but did not remember her direction of travel or speed, the lane she was in, whether the signal was green or red, or any other contextual details.

Officer Whisenhunt drove Petitioner to the Bakersfield Police Department for further questioning by Bakersfield Police Officer Daniel Wells ("Officer Wells"). Petitioner was booked into jail at 4:30 a.m.

Officer Wells performed a collision reconstruction investigation upon arriving at the scene at approximately 1:55 a.m. on April 24, 2011. Based on the "damage to both vehicles and witness statements," he concluded that the "front of the Ford F-150 truck struck the right rear quarter panel of the Grand Am."

As part of his investigation, Officer Wells interview Petitioner at the police department. She was in handcuffs and under arrest at the time. Before he gave Petition her *Miranda* warnings, Officer Wells Asked Petitioner whether she was the driver of the white truck, and she told him she was. Officer Wells then gave her *Miranda* warnings and questioned her about the details of the crash. Petitioner stated that she understood her rights and agreed to talk to him. Although Petitioner appeared intoxicated, she was able to communicate with Officer Wells. Petitioner stated she remembered the collision and the point of impact, but nothing before or after that point. The interview lasted approximately one minute.

At trial, Defense counsel moved to exclude Officer Wells' testimony that Petitioner told him she was the driver of the white truck. Counsel argued that Petitioner's admission was obtained in violation of *Miranda*. The trial court conducted a hearing pursuant to California Evidence Code § 402[4] to clarify the timing of the *Miranda* advisement given by Officer Wells. The Court of Appeal summarized the trial court's § 402 hearing as follows:

> Officer Wells testified at the hearing. He stated that he asked [Petitioner] whether she was the driver simply to confirm that he was interviewing the correct person, not to establish that she was in fact the driver of the white truck. He was acting on the assumption that her status as the driver was already established, as demonstrated by the fact she was under arrest. Thus, once he confirmed [Petitioner] was the driver, he advised her of her rights under *Miranda* and proceeded to interview her about "the details of the crash." . . .

---

[4] California Evidence Code § 402 states:

(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article.
(b) The court may hear and determine the question of admissibility of evidence out of the presence or hearing of the jury; but in a criminal action, the court shall hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests.
(c) A ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto; a separate or formal finding is unnecessary unless required by statute.

6

The trial court summarized the issue before it as follows:

> What I'm dealing with here is I think a fair inference based on all the testimony that we've heard here in this trial is that Officer Whisenhunt, in fact, Mirandized the [Petitioner] and she waived at [the hospital] before they ever entered the squad room. So what I'm dealing with here is a circumstance where you have a new officer coming in after Miranda has already been – after the [Petitioner] has already consented to talking. [¶] He asks a question before he Mirandized her again, which seems to be redundant to me but I'm willing to listen to argument on that point and find out what – if there's a basis for [a] Miranda type objection here, I'm certainly willing to listen to it.

*People v. Trujillo*, (Cal. Ct. App. Nov. 20, 2015) (No. F068133), at *8-9.

Defense counsel argued that the admission of Petitioner's statements were extremely incriminating and should have been excluded because Petitioner was inebriated and disoriented and her *Miranda* waiver was not knowing and intelligent. The prosecution conceded *Miranda* applied to Petitioner's admission, because the statement was incriminating and obtained in a custodial setting. However, the prosecution argued that Petitioner's prior waiver with Officer Whisenhunt was valid and reasonably contemporaneous with Officer Wells' questioning. *Id.* at 9.

The trial court ruled that Officer Wells' testimony regarding Petitioner's admission that she was the driver of the white truck was admissible. The trial court reasoned:

> The point that causes this Court trouble is the fact that – are the facts of the intoxication and the level of intoxication and the fact it was a different officer. Those are the two facts that bother me the most.
>
> On the other hand, the only information I have as we consider what does a .26 mean is some general testimony from what I consider to be an experienced officer but ultimately I have no information, no factual information in front of me. Both counsel have talked about – we've talked about height, weight, on the one hand. We've talked about youth. We've also talked about a prior 647(f)[5], and frankly

---

[5] California penal code §647 states:

[E]very person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

(f) Who is found in any public place under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, controlled substance, or toluene, in a condition that he or she is unable to exercise care for his or her own

7

none of that tells me anything.

It doesn't tell me anything about a person's experience with Miranda. It doesn't tell me anything about a person's experience with alcohol so the .26, I don't know. I don't know. I don't have any facts in front of me that say that at a .26, she couldn't do cartwheels. I just don't know. I know what Officer Whisenhunt described at the scene. Then I know what he described at [the hospital], a seemingly different person and in a different state of mind.

I think the proximity of the Miranda warnings and I think [the prosecutor] probably has a – I think I'm more inclined to go along with his timeline here. It certainly was less than two hours, probably a lot less than that even [giving] defendant the benefit of the doubt on this. So I'll allow the testimony to stand.

*Id*. at 9-10.

The court ruled the testimony was admissible, noting that Petitioner's prior waiver of rights, when questioned by Officer Whisenhunt in his patrol car, was reasonably contemporaneous with the subsequent questioning by Officer Wells.

The jury found Petitioner guilty of driving under the influence of alcohol and causing great bodily injury, (Cal. Veh. Code § 23153(a)), and driving with a blood alcohol content of 0.08 percent or more and causing bodily injury, (Cal. Veh. Code § 23153(b)). The jury also found true the allegations that Petitioner caused bodily injury to more than one person (Cal. Veh. Code § 23558); caused great bodily injury resulting in a victim become comatose (Cal. Veh. Code § 12022.7(b)); and caused great bodily injury to an individual (Cal. Veh. Code § 12022.7(a)). Petitioner was sentenced to a term of 13 years' imprisonment.

On November 20, 2015, the California Court to Appeal affirmed Petitioner's conviction. On March 11, 2016, the California Supreme Court summarily denied review.

On June 5, 2017, Petitioner filed the instant petition. Respondent filed an answer on

---

safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, or toluene, interferes with or obstructs or prevents the free use of any street, sidewalk, or public way.

8

August 4, 2017, and Petitioner filed a reply on September 20, 2017.

**II.     Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring) [hereinafter *Virginia*]. Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly

9

established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

**III.     The State Court Did Not Err in Admitting Petitioner's Post-Arrest Statement**

Petitioner contends the trial court erred and violated her Fifth and Fourteenth Amendment rights by admitting her statement to Officer Wells that she was driving the white truck at the time of the accident, because Officer Wells failed to re-advise Petitioner of her *Miranda* rights. (Doc. 2 at 11.) Petitioner maintains Officer Wells was required to re-advise her of her *Miranda* rights

before questioning her. *Id*. at 17-18. Respondent counters that the Court of Appeal did not violate clearly established constitutional law in finding that the trial court properly admitted Petitioner's statement to Officer Wells. (Doc. 10 at 14-15.)

### A. <u>Standard of Review</u>

The United States Supreme Court has declined to establish a *per se* rule for when an individual in custody is entitled to be re-advised of her *Miranda* rights. *Wyrick v. Fields*, 459 U.S. 42, 47-48 (1982) (per curiam). Instead, the Supreme Court has stressed that courts should look at the totality of circumstances in each individual case. *Id*. at 49. The Ninth Circuit has held that re-advisement is not required simply because time has elapsed. *United States v. Andaverde*, 64 F.3d 1305, 1313 (9th Cir. 1995) (holding that re-advisement of *Miranda* rights was not required where petitioner was questioned by second officer two hours after receiving initial *Miranda* rights). The Ninth Circuit has also held that "a *Miranda* warning does not lose its efficacy if a defendant is warned by one officer and then interrogated by another." *Id*. at 1312 (citing *Jarrell v. Balkcom*, 735 F.2d 1242, 1254 (9th Cir. 1984)).

### B. <u>State Court of Appeal Opinion</u>

The California Court of Appeal found Petitioner's admission to Officer Wells that she was driving the white truck to be properly admitted at trial. The Court explained,

> In this case, the trial court properly found that less than two hours, and in all likelihood, significantly less than two hours, had elapsed between the rights waiver obtained by Officer Whisenhunt in his patrol car and the questioning conducted by Officer Wells at the police department. Officer Whisenhunt testified that he left the scene of the accident about 12:30 a.m. or 12:45 a.m. to take [Petitioner] to Kern Medical Center, which was about a 15- to 20-minute drive away. The officer testified that [Petitioner's] blood was drawn at 1:15 a.m., shortly after arrival at the hospital, but it took considerably longer for a doctor to examine her and provide a medical clearance. The officer estimated that he and [Petitioner] remained Kern Medical Center "anywhere from an hour and a half to two and a half hours" to get the medical clearance from a doctor. Thereafter, the officer placed [Petitioner] in the back of his patrol car, provided a proper *Miranda* advisement, obtained a waiver, and questioned her briefly before taking her to the Bakersfield Police Department's squad room. After a brief interview with Officer

11

Wells, [Petitioner] was booked into the county jail at 4:30 a.m.

According to this timeline, Officer Whisenhunt and [Petitioner] arrived at Kern Medical Center about 1:00 a.m., and they waited a minimum of an hour and a half, possibly more, for [Petitioner] to be medically cleared. The *Miranda* advisement and waiver of rights in Officer Whisenhunt's patrol car thus occurred sometime after 2:30 a.m., and [Petitioner]'s interview with Officer Wells, in turn, occurred after [Petitioner] waived her rights but before she was booked into jail at 4:30 a.m. [FN5] The evidence therefore supported the trial court's determination that "less than two hours" and "probably a lot less than that" had elapsed between the initial *Miranda* waiver and the questioning conducted by Officer Wells at the police department.

> [FN5] At an Evidence Code section 402 hearing held prior to trial, Officer Wells testified that he was called to the scene of the accident at 1:55 a.m. on April 24, 2011, and stayed at the scene for approximately one and a half hours, after which he went to Bakersfield Police Department and interviewed [Petitioner].

Based on the totality of the circumstances, Officer Wells' questioning was reasonably contemporaneous with the waiver of rights obtained by Officer Whisenhunt, rendering a further *Miranda* advisement unnecessary. Less than two hours had elapsed between [Petitioner]'s waiver and Officer Wells' questioning, strongly indicating that renewed *Miranda* warnings were not required. (See *People v. Williams* (2010) 49 Cal.4th 405, 435 [interrogation conducted 40 hours after initial advisement and waiver of rights was reasonably contemporaneous].) Furthermore, the closeness in time of the two rounds of questioning and the similar line of questioning employed by both officers suggested that Officer Wells' questioning was part of an "ongoing and cooperative process," which also obviated the need for renewed warnings. (See *People v. Lewis* (2001) 26 Cal.4th 334, 386-387 [readvisement unnecessary where one interrogator obtained waiver of rights and five hours later a second interrogator elicited defendant's confession, because the second interrogation "was part of an ongoing cooperative process"].) Finally, the fact that [Petitioner] continuously remained in custody during the relevant period – although she was moved from the back of a patrol car to an interrogation room inside the police department – also militated against the need for renewed warnings as there was no indication her status or rights had changed in any material way. (See *People v. Mickle* (1991) 54 Cal.3d 140, 171 [*Miranda* readvisement unnecessary for re-interview of defendant in hospital because he had waived his rights at stationhouse 36 hours earlier and had remained in official custody for entire duration].)

We also reject [Petitioner]'s suggestion that the prior warning and waiver were not reasonably contemporaneous because she was too intoxicated and too traumatized by the accident to focus on and remember the warning. The trial court could reasonably conclude, based on the record, that [Petitioner] understood her rights and knowingly agreed to answer the officers' questions and cooperate with the investigation. (See *People v. Stroud* (1969) 273 Cal.App.2d 670, 380

[.229 blood alcohol content, standing alone, "neither proves nor disproves defendant's capacity to understand and rationalize"]; *Matylinksy v. Budge* (9th Cir. 2009) 577 F.3d 1083, 1095 ["an intoxicated individual can give a knowing and voluntary waiver, so long as that waiver is given by his own free will"]; *United States v. Comstock* (9th Cir. 2011) 443 Fed.Appx. 310, 312 [*Miranda* waiver valid despite intoxication when defendant was coherent, responsive, aware of surroundings, and gave detailed confession]; *People v. York* (1980) 108 Cal.App.3d 779, 787 [*Miranda* waiver valid despite suspect's drinking].) In waiving her rights, [Petitioner] told Officer Whisenhunt that she understood her rights, was "very cooperative," and answered his questions promptly (albeit she could not remember where she was coming from or going to at the time of the accident). Officer Wells testified that, while [Petitioner] "appeared somewhat intoxicated," she seemed "to be able to understand [him] fine."

In sum, [Petitioner's] initial valid waiver was "'reasonably contemporaneous'" with the subsequent questioning by Officer Wells, rendering renewed *Miranda* warnings unnecessary. Officer Wells' questioning thus comported with constitutional requirements. Accordingly, the trial court did not err in admitting his testimony regarding [Petitioner's] admission that she was driving the white truck at the time of the collision.

*Trujillo*, (No. F068133), at *12-14.

### C. **Admission of Petitioner's Statement Was Not Objectively Unreasonable**

Here, the state court did not commit constitutional error by concluding that Petitioner did not need to be re-advised of her *Miranda* rights. Petitioner was read her *Miranda* warnings by Officer Whisenhunt less than two hours before being questioned by Officer Wells. *See United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1129-30 (9th Cir. 2005), *amended by* 416 F.3d 939 (9th Cir. 2005) (holding sixteen hours between initial *Miranda* warnings and subsequent interrogation did not require re-advisement).

Moreover, Petitioner was in custody during the entire period between the time Officer Whisenhunt advised her of her *Miranda* rights and Officer Wells questioned her. Although Petitioner was moved from Officer Whisenhunt's patrol car to the police station, she was in continuous custody. *See Id.* at 1129 (change in location between initial interrogation and subsequent interrogation sixteen hours later did not require re-advisement of *Miranda* warnings where suspect had been in continuous custody since first being advised). Therefore, nothing

13

would have given Petitioner the impression that the *Miranda* advisements had expired. *Rodriguez-Preciado*, 399 F.3d at 1128 ("[Petitioner did] not cite a Supreme Court or Ninth Circuit decision – and we are aware of none – holding that statements made after *Miranda* warnings are administered are nonetheless inadmissible if the warnings become 'stale.'"). The fact that a different officer conducted the second interview does not alter this conclusion. *See Andaverde*, 64 F.3d at 1312 ("a *Miranda* warning does not lose its efficacy if a defendant is warned by one officer and then interrogated by another.").

Petitioner contends that Officer Wells was required to re-advise her of her *Miranda* rights because she was intoxicated and emotionally upset. (Doc. 2 at 17.) Although a waiver of *Miranda* rights must be "done intelligently, knowingly, and voluntarily," the "Supreme Court has never said that impairments from drugs, alcohol, or similar substances can negatively impact that waiver." *Matylinksy v. Budge*, 577 F. 3d 1083, 1095 (9th Cir. 2009) (citing *Miranda*, 384 U.S. at 444; *Carey v. Musladin*, 549 U.S. 70, 74 (2006)). The Ninth Circuit has held that an intoxicated individual can give a knowing and voluntary waiver, "so long as that waiver is given by his own free will." *Id*. at 1095-96 (citing *United States v. Banks*, 282 F.3d 699, 706 (2002), *rev'd on other grounds*, 540 U.S. 31 (2003)).

There is no evidence in the record that Petitioner was so intoxicated that she did not waive her *Miranda* rights on her own free will. Petitioner points to the fact that she was unable to remember what occurred before or after the accident. However, Officer Whisenhunt described Petitioner as "very cooperative" and Petitioner informed Officer Whisenhunt that she understood her rights and was able to promptly answer his questions. (Lodged Doc. 12 at 978.) Indeed, when asked at trial whether Petitioner was too impaired to understand his questions, Officer Whisenhunt responded, "No. She answered the questions that I asked." *Id*. at 1013-14. Officer Wells testified that while Petitioner appeared "mildly intoxicated," she was able to answer his

14

questions. (Lodged Doc. 13 at 1107.)

Even if the Court found it was error for the trial court to have admitted Petitioner's statement to Officer Wells at trial, Petitioner has not shown actual prejudice. A federal habeas petitioner is entitled to relief only if an alleged error had a "substantial and injurious effect or influence in determining the jury's verdict," and if she can establish actual prejudice. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637 (1993).

Here, Petitioner cannot show actual prejudice, because the evidence at trial established that Petitioner was the driver of the white truck at the time of the accident. Petitioner admitted to Officer Whisenhunt that she was the driver of the truck on two different occasions. (Lodged Doc. 12 at 1016.) Officer Whisenhunt also testified that he saw a "striation" injury on Petitioner's left shoulder that appeared to be caused by a seatbelt, which indicated that Petitioner was the driver of the car. *Id*. at 987-88. Further, witnesses at the crash saw the truck only had one occupant, the driver, and witnesses saw Petitioner exit the truck after the crash. (Lodged Doc. 11 at 673, 703-04, 717-18). Despite Petitioner's contention that she was not the driver, witnesses did not see anyone else in the truck before the accident or exit the truck after the accident. Based on these facts, the Court cannot say that the admission of Petitioner's statement to Officer Wells had a "substantial and injurious effect or influence in determining the jury's verdict." *Id*. Therefore, the Court will deny Petitioner's claim.

The Court of Appeal's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Nor was it based on unreasonable determination of the facts. Consequently, Petitioner is not entitled to habeas relief.

### IV. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v.*

15

*Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>     (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>     (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed

further. Accordingly, the Court will decline to issue a certificate of appealability.

**V.     Conclusion**

Based on the foregoing, the Court hereby DENIES with prejudice the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and declines to issue a certificate of appealability. The Clerk of the Court is directed to enter judgment for the Respondent.

IT IS SO ORDERED.

Dated:   **May 16, 2018**                             /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE